## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STACY TONGATE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| TOYS "R" US, INC. d/b/a BABIES "R" US, and TOYS "R" US-DELAWARE, INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Stacy Tongate ("Plaintiff") brings this Class Action Complaint against Defendants Toys "R" Us, Inc. d/b/a Babies "R" Us and Toys "R" Us-Delaware, Inc. (collectively "BRU"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      For years, BRU has held itself out as the "nations leading dedicated baby products retailer."[1] Extolling the virtues of its baby registry services, BRU's website boasts that "[y]ou can count on 'us' to help you find everything to get you and your baby off to a happy start."[2]

2.      To encourage even more expectant parents to use its baby registry services — and thereby reap significant profits — BRU launched its "Endless Earnings" program on April

---

[1] http://www.toysrusinc.com/about-us/ (last visited February 25, 2015).
[2] https://babyregistry.babiesrus.com/home?ab=BRU_Header:Utility2:Baby-Registry:Category (last visited February 25, 2015).

1, 2014. The Endless Earnings program offers participants the opportunity to earn rewards ("Rewards") based on the total amount of purchases made from their registries. Per the program's terms, participants can earn up to 10% back on registry purchases — with no limits. As BRU proclaims on its website "the best baby registry keeps getting better!"[3]

3.      Unfortunately, those who register for the program soon discover BRU's tantalizing offer of "Endless Earnings" is little more than empty rhetoric. Indeed, consumers throughout the country have complained of receiving Rewards that reflect only a fraction of the amount to which they are contractually entitled.

4.      Accordingly, Plaintiff brings this action on behalf of herself and all other similarly situated members of the below-defined Classes for violation of the New Jersey Consumer Fraud Act, breach of contract, and unjust enrichment.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than BRU's states of citizenship, as detailed below.

6.      This Court has personal jurisdiction over BRU under the Illinois long-arm statute, 735 ILCS 5/2-209, because BRU conducts substantial business in this State and a substantial portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward this State. BRU — by entering into contracts with consumers in this State, and by misrepresenting to consumers in this State the benefits they would receive pursuant to those

---

[3] *Id.*

contracts — has sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

7.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as: (1) a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District; and (2) BRU conducts substantial business in this District.

## PARTIES

8.       Plaintiff Stacy Tongate is natural person and a citizen of the State of Illinois.

9.       Defendant Toys "R" Us, Inc. d/b/a Babies "R" Us, is a privately-held corporation organized, existing, and doing business under the laws of the State of Delaware, with its principal place of business in Wayne, New Jersey. In the 2013 fiscal year, Toys "R" Us, Inc. achieved revenues in excess of $12 billion with over $8 billion in U.S. sales. The company operates over 1,500 stores worldwide and is a U.S. market leader in the toy and baby products industry.

10.       Defendant Toys "R" Us – Delaware, Inc. is a privately-held corporation organization, existing, and doing business under the laws of the State of Delaware, with its principal place of business in Wayne, New Jersey. Defendant Toys "R" Us – Delaware, Inc. operates as a subsidiary of Defendant Toys "R" Us, Inc.

## FACTUAL BACKGROUND

*BR's Baby Registry Services*

11.       According to its website, BRU is "the largest baby product specialty store chain the world and a leader in the juvenile industry." As of November 2014, BRU operated more than 225 stores in the United States. In addition to these "brick-and-mortar" stores, BRU conducts business throughout the United States via its website, www.babiesrus.com.

12.     In an effort to help expectant parents prepare for a baby's arrival, BRU helps consumers create a customized registry that contains a wish list of desired products to be purchased. Further, BRU offers baby registry consultants and product checklists for new and existing parents.

13.     Consumers can enroll with BRU's baby registry services either online or at any of BRU's store locations. Generally, registrants provide personal information such as his or her name, address, phone number, and e-mail address when enrolling in a BRU baby registry program.

14.     After completing the enrollment process, the next step is to select which products to include on the registry for purchase. Typically, BRU baby registries include products such as cribs, dressers, bedding, car seats, strollers and carriers, feeding devices, diapers, clothing, and toys.

15.     After an expectant parent enrolls with BRU and designs a baby registry, the registrant is assigned a specific registry number and webpage that can be accessed by others around the globe. Friends and family that want to purchase gifts from the registry can do so online or at any BRU store.

***The Endless Earnings Program***

16.     On April 1, 2014, BRU implemented its Endless Earnings program as a new component of its baby registry services, under which registrants earn Rewards based on the total value of items purchased from their registries.

17.     Because the Endless Earnings program is a mandatory part of BRU's registry services — that is, all those who register with BRU are automatically enrolled in the Endless

Earnings Program[4] — it provides a powerful incentive to induce expectant parents to register with BRU.

18. BRU advertises the Endless Earnings program both online and in stores in a similar fashion. For instance, BRU's online website states that "Endless Earnings is our newest most exciting benefit . . . now you'll earn up to 10% back on purchases from your registry, even your own. No limits!"[5] BRU also has nearly identical banner advertisements in stores relating to its Endless Earnings program. For example, the BRU in-store advertisement below reads, "new! endless earnings. only BRU registry gives you up to 10% back on registry purchases, even your own. No limits!"



---

[4] Given this, the Endless Earnings Program is available in all fifty states, as well as the District of Columbia.

[5] http://www.toysrus.com/shop/index.jsp?categoryId=41541936 (last visited February 10, 2015).

19.     The terms of the Endless Earnings program are set forth in a standard-form contract (the "Contract") that each registrant must execute in order to sign up for BRU's registry services.

20.     Per the Contract, registrants earn Rewards under the Endless Earnings program based on a specific formula (the "Formula"). The Formula provides that "[r]egistrants will receive 5% of the first $300 in registry purchases, and 10% on those registry purchases over $300.00." To earn benefits, purchases must be made from the time of registration up to 30 days after a baby's expected arrival date. There are no limits on the amount of benefits that can be earned. To illustrate how the Formula works, the Contract provides the following example: "For your first $300 in baby registry purchases, you'll receive $15 back ($300 X 5% = $15.) If you reach $1,000 in baby registry purchases, you'll receive $85, ($300 X 5% = $15) + ($700 X 10% = $70) = $85."

21.     Under the terms of the Contract, the following purchases are excluded from the Formula: gift cards, VIB (Very Important Baby) loads, purchases made with a BRU completion coupon, buyer protection plan, Apple products, tablets, video game hardware, assembly/delivery fees, warranties, shipping and handling charges, taxes, and items on lawaway. Additionally, "[n]o more than 6 of the same or similar items of each of the following categories will count towards Endless Earnings Registry Benefit: Cribs, Dressers/Changing Tables, Mattresses, Gliders, Strollers, Car Seat/Car Seat Base, Monitors, Breast Pumps, Highchairs, Play Yard, Entertainers, Bouncers, Swings, Bassinets, and Carriers."

22.     Approximately ten weeks after a baby's expected arrival date, BRU promises to issue the registrant's Rewards in the form of a gift card, which can be used to purchase products on BRU's website, or at any of its store locations throughout the country.

***BRU's Refusal to Honor Its Contractual Obligations***

23.     After BRU implemented the Endless Earnings Program, scores of irate consumers

reported being drastically shortchanged on their earned Rewards:

- We had over $4,000 in purchases and only got $170! I was thinking we were going to get double that! I realize it's a lot of money, but between our purchases and our registry this isn't even close! What a scam!![6]

- I spent $600+ and got $13.50. I complained on their Facebook page, you all should too. I want a price breakdown to see what kind of math they use.

- Omg [expletive deleted] them[.] I spent almost 2,000$ [sic] and they are trying to give me Only 85$/back n [sic] rip me off. I card [sic] them twice now o [sic] have to talk to a manager [expletives deleted], lime [sic] they don't rip u [sic] off enough with their prices[7]

24.     Complaints such as these demonstrate that BRU has engaged in a widespread

pattern and practice of breaching the Contract by refusing to provide the full measure of Rewards

earned under the Endless Earnings program.

***BRU's Deceptive Business Practices***

25.     There can be no serious debate that BRU is aware of its failure to fulfill its

contractual obligations. Indeed, the complaints set forth above demonstrate that registrants

frequently contact BRU to complain about receiving only a portion of their earned Rewards.

26.     When contacted by customers regarding their missing Rewards, however, BRU

refuses to provide information on how their particular Rewards were calculated. Making matters

worse, BRU even goes so far as to tell those registrants that it cannot provide the total value of

qualifying purchases made from their registries.

27.     When viewed in connection with its repeated contractual breaches, BRU's

complete unwillingness to provide registrants with any information as to how their Rewards

---

[6] http://www.whattoexpect.com/forums/october-2014-babies/topic/endless-earnings-bs.html (last visited February 26, 2015).
[7] *Id.*

were calculated leads to only one conclusion: BRU never intended to provide registrants with their full measure of earned rewards.

28. Accordingly, at all relevant times, BRU misrepresented the method by which it would calculate the Rewards provided to registrants under the Endless Earnings program. Although BRU represented that it would calculate those Rewards in accordance with the Formula, the method by which BRU *actually* calculates Rewards has zero relationship to the Formula. Contrary to BRU's representations, registrants do not receive 5% back on the first $300 in purchases, and 10% back on all purchases over $300. Rather than using this Formula to determine a registrant's Rewards based on the total amount of qualifying purchases, BRU simply provides registrants with an arbitrary amount that represents only a fraction of their earned Rewards.

29. The foregoing misrepresentations, which BRU conveyed to Plaintiff and Classes at the time of registration through its online and in-store advertisements, were material to Plaintiff's and the Class's decision to register with BRU. Specifically, Plaintiff and the Class would not have registered with BRU had they known that it had no intention of fulfilling its obligations under the Endless Earnings Program.

30. Moreover, BRU failed to inform Plaintiff and the Class that they would be unable to receive information on: (1) the total amount of qualifying purchases made off their registries in the event that they sought to question the Rewards they *did* receive through the Endless Earnings program; or (2) the actual method that BRU used to calculate their Rewards.

31. These omissions were also material to Plaintiff's and the Class's decision to register with BRU, as they would not have done so had these facts been disclosed.

32. As of March 2014, BRU's corporate headquarters in Wayne, New Jersey housed approximately 2,000 employees, including marketing, sales, and operations divisions. BRU's

New Jersey offices are responsible for marketing, advertising, and operating the Endless Earnings registry program. Thus, on information and belief, BRU's material misrepresentations and omissions alleged herein relating to the marketing, advertising, and operations of the Endless Earnings program emanated from the Wayne, New Jersey corporate offices.

***Facts Relating to Named Plaintiff***

33.     At some time between April and May of 2014, Plaintiff visited a BRU store in Illinois to obtain information about its registry services.

34.     At this time, Plaintiff noticed BRU's advertisements for the Endless Earnings program. Based on the representations about the Rewards provided under the Endless Earnings program, Plaintiff decided to register with BRU. Accordingly, she filled out a registration form with her name, address, phone number, e-mail address, baby's gender, and expected arrival date.

35.     After turning in the completed registration form, a BRU employee assisted Plaintiff in selecting over 100 products for her registry.

36.     Between the date of registration and August 31, 2014 (i.e. 30 days after the expected arrival date), over $3,438 in qualifying purchases were made from Plaintiff's registry. Moreover, because BRU represented that qualifying purchases made by registrants would count towards their Rewards, Plaintiff purchased one or more items from her own registry.

37.     Accordingly, pursuant to BRU's Endless Earnings program, Plaintiff earned Rewards of at least $328.80 ($300 X 5% = $15) + ($3138 X 10% = $313.80) = $328.80).

38.     But on September 2014, Plaintiff a gift card for only $160.92 —far less than her earned Rewards. What is more, BRU's e-mail did not explain how it calculated her Rewards, nor did the e-mail state the total amount of purchases made off of Plaintiff's baby registry.

39.     Given this, Plaintiff contacted BRU's customer service department for information on: (1) the price of each item that was purchased off of her registry at the time in

which it was purchased, (2) the total amount of purchases made off of her baby registry, and (3) the method by which BRU calculated her Rewards.

40.    Much to Plaintiff's chagrin, BRU refused to provide the requested information, claiming that it could not access the necessary records.

41.    Plaintiff contacted BRU on numerous subsequent occasions in the hopes of reaching a supervisor (or any BRU employee, for that matter) that could explain the shortfall in her Rewards. On each occasion, BRU claimed that it could not provide Plaintiff with the information she requested.

42.    On or around February 18, 2015, BRU sent Plaintiff an additional eGift card for $144 in Rewards. But even when factoring in this additional amount, BRU *still* owes Plaintiff approximately $23 in Rewards. Importantly, BRU did not provide Plaintiff with any explanation as to the $23 shortfall, nor has it explained the true method by which it calculated her Rewards.

## I.   CLASS ALLEGATIONS

43.    Plaintiff brings Counts I-III, as set forth below, on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a),(b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons in the United States who created a registry with BRU between April 1, 2014 and the present, and who failed to receive their full measure of earned Rewards (the "Participant Class").

Excluded from the Participant Class are BRU's subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

44.     Plaintiff brings Counts IV, as set forth below, on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a),(b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons in the United States who created a registry with BRU between April 1, 2014 and the present, and who purchased a product from their own registry and subsequently failed to receive their full measure of earned Rewards (the "Purchaser Class").

Excluded from the Purchaser Class are BRU's subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

45.     The Participant Class and Purchaser Class shall be referred to collectively as "the Class" below unless otherwise specified.

46.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by BRU's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from BRU's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

48.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a) Whether BRU breached their agreements with Plaintiff and the Class members;

(b) Whether BRU has been unjustly enriched as a result of the conduct complained of herein;

(c) Whether BRU's representations as discussed herein regarding the Endless Earnings program were misleading or likely to deceive;

(d) Whether Plaintiff and the Class were deceived by BRU's misrepresentations and material omissions;

(e) Whether BRU's conduct constitutes violations of the laws asserted herein;

(f) Whether Plaintiff and the Class have been injured and the proper measure of their losses as a result of those injuries;

(g) Whether Plaintiff and the Class are entitled to an award of compensatory/actual damages; and

(h) Whether Plaintiff and the Class are entitled to injunctive or declaratory relief.

49.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above and were subject to BRU's deceptive and misleading conduct.

50.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent; she has retained counsel competent

and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

51. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** BRU has acted or refused to act on grounds generally applicable to Plaintiff and the Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

52. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against BRU, so it would be impracticable for Class members to individually seek redress for BRU's wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## II.  CLAIMS ALLEGED

### COUNT I
### Breach of Contract
### (On Behalf of the Classes)

53. Plaintiff adopts and incorporates by reference Paragraphs 1-52 as if fully set forth herein.

54. Plaintiff and the other members of the Class entered into the Contract with BRU upon registering for the Endless Earnings program.

55. The Contract is a valid, enforceable contract supported by consideration.

56. Plaintiff and the Class have satisfied all conditions precedent to the Contract.

57. Plaintiff and the Class are not in breach of the Contract.

58. Nevertheless, BRU breached the Contract by failing to provide Plaintiff and the Class with the full amount of earned Rewards in accordance with the Formula.

59. As a direct and proximate consequence of BRU's breach of the Contract, Plaintiff and the Class have sustained actual, monetary damages in an amount equal to the difference in value between: (1) the Rewards that they earned according to the Formula; and (2) the Rewards that BRU actually provided.

60. Accordingly, Plaintiff and the Class seek an order awarding damages in an amount to be determined at trial.

## COUNT II
### Unjust Enrichment (In the Alternative to Count I)
### (On Behalf of the Classes)

61. Plaintiff adopts and incorporates by reference Paragraphs 1-52 as if fully set forth herein.

62. BRU has received a benefit from Plaintiff and the Class in the form of sales and profits from purchases made off the registries that were created pursuant to the Endless Earnings Program, without providing the full measure of Rewards promised to Plaintiff and the Class.

63. BRU has knowingly appreciated and accepted this benefit, which has resulted and continues to result in an inequity to Plaintiff and each member of the Class.

64. BRU's retention of such benefit violates the fundamental principles of justice, equity, and good conscience.

65. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of BRU's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT III**
**Violation of the New Jersey Consumer Fraud Act**
**(On Behalf of the Participant Class)**

66. Plaintiff adopts and incorporates by reference Paragraphs 1-52 as if fully set forth herein.

67. BRU is a "person" within the meaning of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.* (the "CFA"). *See id.* at § 56:8-1(d) (The term "person" as used in this act shall include any . . . corporation, company, trust, business entity or association . . . .").

68. BRU's Endless Earnings program constitutes "merchandise" within the meaning of the CFA. *See id.* at § 56:8-1(c) (defining merchandise as including "any services" offered "directly or indirectly to the public for sale").

69. The advertisements for the Endless Earnings program, both online and in BRU's store locations, constitute "advertisements" within the meaning of the CFA. *See* N.J. Stat. § 56:8-1(a) ("The term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise . . . .")

70. Accordingly, BRU's business activities with respect to the Endless Earnings Program constitute the sale or advertisement of merchandise within the meaning of the CFA.

71. The CFA prohibits BRU from engaging in "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment suppression, or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale or advertisement of any merchandise …" *Id.* at § 56:8-2.

72.     As described above, BRU's conduct with respect to the Endless Earnings program violated the CFA in the following ways.

73.     ***First***, BRU affirmatively misrepresented the manner in which it would calculate the benefits owed to Plaintiff and the Participant Class under the Endless Earnings Program. Specifically, BRU represented that it would provide Plaintiff and the Participant Class with Rewards calculated pursuant to the Formula. BRU conveyed these misrepresentations to Plaintiff and the Class at the time of registration, through the advertisements presented on its website and in its storefront locations. At this time, BRU knew that it had no intention of providing Plaintiff and the Participant Class with Rewards calculated pursuant to the Formula.

74.     ***Second***, BRU omitted material facts with respect to the information provided to Plaintiff and the Participant Class regarding the Endless Earnings program. In particular, BRU failed to disclose that they would receive Rewards calculated in an arbitrary manner that bore zero relationship to the Formula described in the Contract, as well as the in-store and online advertisements for the Endless Earnings Program. Furthermore, BRU failed to disclose that Plaintiff and the Participant Class would be unable to access information regarding: (1) the total dollar amount of qualifying purchases made off their registries, and (2) the actual method by which their Rewards were calculated.

75.     Plaintiff and the other members of the Participant Class would not have registered with BRU had they known that BRU: (1) had no intention on calculating their Rewards pursuant to the Formula; or (2) that BRU would refuse to provide any information regarding the method by with their Rewards were actually calculated. Accordingly, the aforementioned

misrepresentations and omissions were material to Plaintiff and the Participant Class's decision to register with BRU.

76.     As described above, BRU's conduct was dishonest, devoid of fair dealing and good faith, and had the capacity to mislead reasonable consumers. Accordingly, BRU's misrepresentations and material omissions constitute unconscionable commercial and/or deceptive practices under the Act.

77.     BRU intended for Plaintiff and the Class members to rely on these unconscionable commercial and deceptive practices when Plaintiff and the Class members participated in the Endless Earnings program.

78.     As a proximate result of BRU's conduct, Plaintiff and the Participant Class have suffered ascertainable losses in an amount to be proven at trial.

**COUNT IV**
**Violation of the New Jersey Consumer Fraud Act**
**(On Behalf of the Purchaser Class)**

79.     Plaintiff adopts and incorporates by reference Paragraphs 1-52 as if fully set forth herein.

80.     BRU is a "person" within the meaning of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.* (the "CFA"). *See id.* at § 56:8-1(d) (The term "person" as used in this act shall include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof . . . .").

81.     BRU's Endless Earnings program constitutes "merchandise" within the meaning of the CFA. *See id.* at § 56:81(c) (defining merchandise as including "any services" offered "directly or indirectly to the public for sale").

82. The advertisements for the Endless Earnings program, both online and in BRU's store locations, constitute "advertisements" within the meaning of the CFA. *See* N.J. Stat. § 56:8-1(a) ("The term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise . . . .").

83. Accordingly, BRU's business activities with respect to the Endless Earnings Program constitute the sale or advertisement of merchandise within the meaning of the CFA.

84. The CFA prohibits BRU from engaging in "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." *Id.* at § 56:8-2.

85. As described above, BRU's conduct with respect to the Endless Earnings program violated the CFA in the following ways.

86. **First**, BRU affirmatively misrepresented the manner in which it would calculate the benefits owed to Plaintiff and the Participant Class under the Endless Earnings Program. Specifically, BRU represented that it would provide Plaintiff and the Participant Class with Rewards calculated pursuant to the Formula. BRU conveyed these misrepresentations to Plaintiff and the Class at the time of registration, through the advertisements presented on its website and in its storefront locations. At this time, BRU knew that it had no intention of providing Plaintiff and the Participant Class with Rewards calculated pursuant to the Formula.

87. **Second**, BRU omitted material facts with respect to the information provided to Plaintiff and the Participant Class regarding the Endless Earnings program. In particular, BRU

failed to disclose that they would receive Rewards calculated in an arbitrary manner that bore zero relationship to the Formula described in the Contract, as well as the in-store and online advertisements for the Endless Earnings Program. Furthermore, BRU failed to disclose that Plaintiff and the Participant Class would be unable to access information regarding: (1) the total dollar amount of qualifying purchases made off their registries, and (2) the actual method by which their Rewards were calculated.

88.     Plaintiff and the other members of the Participant Class would not have registered with BRU had they known that BRU: (1) had no intention on calculating their Rewards pursuant to the Formula; or (2) that BRU would refuse to provide any information regarding the method by which their Rewards were actually calculated. Moreover, had these facts been known to Plaintiff and the other members of the Purchaser Class, they would not have purchased one or more items off their respective registries. Accordingly, the aforementioned misrepresentations and omissions were material to Plaintiff and the Participant Class's decision to: (1) register with BRU; and (2) purchase one or more items off their respective registries.

89.     As described above, BRU's conduct was dishonest, devoid of fair dealing and good faith, and had the capacity to mislead reasonable consumers. Accordingly, BRU's misrepresentations and material omissions constitute unconscionable commercial and/or deceptive practices under the Act.

90.     BRU intended for Plaintiff and the Class members to rely on these unconscionable commercial and deceptive practices when Plaintiff and the Class members participated in the Endless Earnings program.

91.     As a proximate result of BRU's conduct, Plaintiff and the Participant Class have suffered ascertainable losses in an amount to be proven at trial.

### III.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

### IV.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests the following relief:

(a)     that the Court determine that this action may be maintained as a class action and certify Plaintiff as representative of each class he seeks to represent;

(b)     that BRU's conduct alleged herein be adjudged and decreed to constitute breach of contract, or in the alternative, unjust enrichment;

(c)     that BRU's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted;

(d)     that BRU be enjoined from engaging in the wrongful conduct alleged herein;

(e)     that Plaintiff and the Class be awarded damages and, where applicable, treble, multiple, disgorgement, or other damages – with interest – according to applicable common law and the laws of New Jersey;

(f)     that Plaintiff and the Class recover their costs in bringing this suit, including reasonable attorneys' fees and expenses as provided by law; and

(g)     that Plaintiff and the Class be granted such other and further relief as the nature of the case may require or as this Court deems just and proper.

Dated: March 16, 2015                                Respectfully submitted,


                                                     */s/ Michael L. Silverman*
                                                     One of the Attorneys for Plaintiff
                                                     And the Proposed Putative Class

                                                     Michael L. Silverman
                                                     *msilverman@siprut.com*
                                                     Gregg M. Barbakoff
                                                     *gbarbakoff@siprut.com*
                                                     Matthew D. Savin
                                                     *msavin@siprut.com*
                                                     **SIPRUT** PC
                                                     17 N. State Street
                                                     Suite 1600
                                                     Chicago, Illinois  60602
                                                     312.236.0000
                                                     Fax: 312.470.6588


4837-4345-4754, v. 1